IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES I. KUROIWA, JR., PATRICIA A. CARROLL, TOBY M. KRAVET, GARRY P. SMITH, EARL F. ARAKAKI, and THURSTON TWIGG-SMITH,<br><br>          Plaintiffs,<br><br>      vs.<br><br>LINDA LINGLE, et al.<br><br>          State Defendants,<br><br>HAUNANI APOLIONA, et al.<br><br>          OHA Defendants.<br>_____ | CIVIL NO. 08-00153 JMS-KSC<br><br>ORDER (1) GRANTING STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, AND (2) GRANTING OHA DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

**<u>ORDER (1) GRANTING STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, AND (2) GRANTING OHA DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**I. <u>INTRODUCTION</u>**

On April 3, 2008, Plaintiffs filed a Complaint titled "Six Non-Ethnic Hawaiians' Complaint for Breach of Trust and Deprivation of Civil Rights and to Dismantle Office of Hawaiian Affairs," naming as Defendants various state officers in their official capacities ("State Defendants"), and the trustees of the Office of Hawaiian Affairs ("OHA") in their official capacities ("OHA

Defendants"). The Complaint seeks injunctive relief for Defendants' alleged "breach of Hawaii's federally created ceded lands trust and the incidentally related State public trust; and Defendants' civil conspiracy to deprive them of equal protection of the laws and equal privileges and immunities under the laws." Compl. ¶ 2.

Currently before the court are the State Defendants and the OHA Defendants' Motions for Judgment on the Pleadings. Based on the following, the court GRANTS Defendants' Motions for Judgment on the Pleadings, and declines jurisdiction over Plaintiffs' state law claim.

## II.  BACKGROUND

**A.  Historical Background**

Because the Complaint is rooted in Hawaii's history, the court provides the following background for context:

In 1898, President McKinley signed a joint resolution, referred to as the Newlands Resolution, to annex the Hawaiian Islands as a territory of the United States. 55th Cong., Sess. II, Res. No. 55, 30 Stat. 750 (1898). The Resolution recognized that the Republic of Hawaii ceded all public lands to the United States, and required that revenues from these lands be "used solely for the benefit of the inhabitants of the Hawaiian Islands for educational and other public

purposes." *Id.*; *see also* Compl. ¶ 13.  Two years later, the Hawaiian Organic Act established the Territory of Hawaii and put the ceded lands in the control of the Territory of Hawaii "until otherwise provided for by Congress."  Act of Apr. 30, 1900, ch. 339, § 91, 31 Stat. 159; *see also Arakaki v. Lingle*, 477 F.3d 1053 (9th Cir. 2007) (describing history of Hawaii); Compl. ¶ 14.

In 1921, due to concern "with the condition of the native Hawaiian people[,] . . . Congress enacted the Hawaiian Homes Commission Act ["HHCA"], which set aside about 200,000 acres of the ceded public lands and created a program of loans and long-term leases for the benefit of native Hawaiians."  *Rice v. Cayetano*, 528 U.S. 495, 507 (2000) (*citing* Act of July 9, 1921, ch. 42, § 101(b)(1), 42 Stat. 108).  The HHCA defines "native Hawaiian[s]" to include "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778."  Act of July 9, 1921, ch. 42, § 201(a)(7), 42 Stat. 108; *see also* Compl. ¶ 17 (describing HHCA).

In 1959, as a condition of statehood, Hawaii incorporated the HHCA into its state Constitution, and the United States granted Hawaii title to all public lands within the state.  Act of Mar. 18, 1959, Pub. L. No. 86-3, § 5(b)-(d), 73 Stat. 5 ("Admission Act").  The Admission Act further declared that the lands, "together with the proceeds from the sale or other disposition of any such lands

and the income therefrom, shall be held by [the State] as a public trust" to be used:

> [1] for the support of the public schools and other public educational institutions, [2] for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920, as amended, [3] for the development of farm and home ownership on as widespread a basis as possible[, 4] for the making of public improvements[,] and [5] for the provision of lands for public use.

*Id.* § 5(f), 73 Stat. 6 ("the § 5(f) trust"). In total, Hawaii was granted the 200,000 acres previously set aside under the HHCA, and an additional 1.2 million acres. *Arakaki*, 477 F.3d at 1054; *see also* Compl. ¶ 19.

In 1978, through constitutional amendment, Hawaii established OHA to "'provide Hawaiians the right to determine the priorities which will effectuate the betterment of their condition and welfare and promote the protection and preservation of the Hawaiian race, and . . . [to] unite Hawaiians as a people.'" *Rice*, 528 U.S. at 508 (*quoting* 1 Proceedings of the Constitutional Convention of Hawaii of 1978, Comm. of the Whole Rep. No. 13, p. 1018 (1980)). OHA's purposes include, among other things, "the betterment of conditions of native Hawaiians." Hawaii Revised Statutes ("HRS") § 10-3(1). HRS § 10-3(1) further provides that "[a] pro rata portion of all funds derived from the [the § 5(f) trust] shall be funded in an amount to be determined by the legislature for this purpose, and shall be held and used solely as a public trust for the betterment of the

conditions of native Hawaiians."

**B.     Procedural History**

On April 3, 2008, Plaintiffs filed their Complaint, alleging that all citizens of the State of Hawaii are beneficiaries of the § 5(f) trust.  Compl. ¶ 28. The Complaint details the State's disbursements to OHA, OHA's expenditures on issues that promote native Hawaiian interests (such as the Akaka bill and *Kau Inoa*), *id.* ¶¶ 30-49, and real property owned by OHA.  *Id.* ¶¶ 56-57.  The Complaint asserts three claims: violation of 42 U.S.C. § 1983 on the basis that the distribution of trust proceeds to native Hawaiians is a breach of § 5(f) of the Admission Act and/or that § 5(f) of the Admission Act is unconstitutional to the extent it gives native Hawaiians a pro rata portion of the trust proceeds (Count I), breach of a State public trust based on transfer of lands to OHA that are *not* part of the § 5(f) trust (Count II), and violation of  42 U.S.C. § 1985 and common law conspiracy amongst Defendants and unnamed others to deprive non-ethnic Hawaiians equal privileges and immunities under the law (Count III).

On April 22, 2008, the court, pursuant to Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403, certified to the Attorney General of the United States that Plaintiffs have raised the constitutionality of § 5(f) of the Admission Act.  On June 6, 2008, the United States provided notice that it does

not intend to intervene in this action at this time.

On May 9, 2008, OHA Defendants and State Defendants separately filed Motions for Judgment on the Pleadings. On June 9, 2008, Plaintiffs filed Oppositions, and on June 20, 2008, Defendants filed their Replies. A hearing was held on July 1, 2008.

### III.  STANDARDS OF REVIEW

**A.     Motion to Dismiss for Lack of Standing**

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Graham v. FEMA*, 149 F.3d 997, 1001 (9th Cir. 1998) (*quoting Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "A plaintiff has the burden of establishing the elements required for standing." *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); *Tosco Corp. v. Cmty. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

**B.     Motion for Judgment on the Pleadings**

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is evaluated according to virtually the same legal standard as a motion to dismiss under Rule 12(b)(6). *See*

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988); *Luzon v. Atlas Ins. Agency*, 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003). "Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is proper 'when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007) (*quoting Fajardo v. County of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)).

## IV.  ANALYSIS

**A.   Federal Claims**

   *1.   Count I: Breach of Federally Created Lands Trust*

Defendants argue that Count I must be dismissed with prejudice because the United States is an indispensable party who has not consented to suit. *See* State Defs.' Mot. 1; OHA Defs.' Mot. 12-18. Based on *Arakaki*, the court agrees.

In *Arakaki*, plaintiffs alleged that OHA and other state programs "that preferentially treat persons of Hawaiian ancestry violate the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and the terms of [the § 5(f) trust]." *Arakaki*, 477 F.3d at 1053. The Ninth Circuit rejected the plaintiffs' argument that they had

standing to assert these claims as beneficiaries of § 5(f) trust,[1] and held that "the United States remains an indispensable party to a suit challenging the trust, and Plaintiffs have no standing to sue the United States." *Id.* at 1061. *Arakaki* explained that:

> We have previously held that the expenditure of trust revenue is governed by the Admission Act. *Price v. Akaka*, 928 F.2d 824, 827 (9th Cir. 1990). Any challenge to the expenditure of trust revenue brought by alleged trust beneficiaries must challenge the substantive terms of the trust, which are found in the Admission Act. For the reasons we explained in Part III.A.2, *supra*, the United States is an indispensable party to any challenge to the Admission Act. Accordingly, . . . the United States . . . remains indispensable with respect to challenges to the expenditure of trust revenue.

*Id.* at 1065.

*Arakaki* controls. Plaintiffs allege that "disbursement and transfers by State officials and the OHA trustees *only* for Hawaiian beneficiaries breach their fiduciary duty of impartiality and duty not to comply with illegal [§ 5(f)] trust terms." Compl. ¶ 52 (emphasis in original). By challenging the expenditure of trust revenue, Count I challenges the substantive terms of the Admissions Act and makes the United States an indispensable party for this claim. Plaintiffs have no

---

[1] The *Arakaki* plaintiffs also asserted standing as taxpayers, which the Ninth Circuit rejected in light of *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006). *Arakaki*, 477 F.3d at 1061-62. In this action, Plaintiffs do not argue taxpayer standing.

standing to sue the United States, and therefore lack standing to bring this claim.

Plaintiffs make several arguments in support of standing and against application of *Arakaki*, none of which is persuasive.  First, Plaintiffs argue, without citing *any* authority whatsoever, that if the United States is a required party, then the court must join the United States pursuant to Federal Rule of Civil Procedure 19(a)(2).  Pls.' State Opp'n 4-5.  This argument is frivolous -- the United States cannot be joined where it has not consented to suit.  *See Republic of Philippines v. Pimentel*, 128 S. Ct. 2180, 2191 (2008) ("A case may not proceed when a required-entity sovereign is not amenable to suit."); *see also* Fed. R. Civ. P. 19(b) (discussing requirement that the court determine whether an action should proceed where joinder of a required party is not possible).

Second, Plaintiffs argue, again with no support, that the United States is not a required party because it could have intervened, but chose not to.  Pls.' State Opp'n 5.  Federal Rule of Civil Procedure 5.1 requires the court to certify to the Attorney General that the constitutionality of a federal statute has been questioned, and allows the United States to intervene.  Similarly, 28 U.S.C. § 2403 provides a mechanism by which the United States may intervene to present evidence "and argument on the question of constitutionality."  Neither Rule 5.1 nor 28 U.S.C. § 2403 requires the United States to intervene.  Nor do they

contemplate that this notice is a substitute for the United States' consent to suit or that the court could join the United States without its consent. Indeed, the court provided notice, and the United States chose not to intervene.

Third, Plaintiffs argue that interpreting *Arakaki* to bar their standing would conflict with various other Ninth Circuit decisions finding that beneficiaries of the § 5(f) trust have standing. Pls.' State Opp'n 12-17. *Arakaki* addressed and rejected this same argument:

> Plaintiffs point to several cases in which we have held that native Hawaiians, as trust beneficiaries, could bring suit under 42 U.S.C. § 1983 against the State to enforce the terms of the trust. *E.g., Price v. Akaka*, 928 F.2d 824 (9th Cir. 1990); *Keaukaha-Panaewa Cmty. Ass'n v. Hawaiian Homes Comm'n*, 739 F.2d 1467 (9th Cir. 1984); *see also Price v. Akaka*, 3 F.3d 1220, 1223-25 (9th Cir. 1993). Those cases involved claims that the state was improperly administering the trust and sought to enforce the trust's terms.[2]
> 
> We believe that this argument is disposed of easily. Those cases differ from the present challenge in a fundamental way: although those previous § 1983 cases have involved suits to enforce the express terms of the trust, this suit, by contrast, asks the court to prohibit the enforcement of a trust provision. That is, Plaintiffs now raise a § 1983 claim that is unique in that it does not seek to enforce the substantive terms of the trust, but instead challenges at least one of those terms as constitutionally unenforceable.

---

[2] In addition to these cases, Plaintiffs cite to *Day v. Apoliona*, 496 F.3d 1027 (9th Cir. 2007), which was decided after *Arakaki*. *Day* does not undermine *Arakaki's* distinction of these cases; the trust beneficiaries in *Day* brought suit to enforce the terms of the trust, as opposed to prohibit its enforcement. *Day*, 496 F.3d at 1033.

*Arakaki*, 477 F.3d at 1058. Just as in *Arakaki*, Plaintiffs challenge the distribution and expenditure of trust funds for the benefit of native Hawaiians. Because the trust proceeds are to be used, among other things, "for the betterment of the conditions of native Hawaiians," Act of Mar. 18, 1959, Pub. L. No. 86-3, § 5(f), 73 Stat. 6, Plaintiffs are challenging the terms of the trust, as opposed to seeking to enforce its terms.[3]

Fourth, Plaintiffs argue that they have standing as trust beneficiaries pursuant to *Day v. Apoliona*, 496 F.3d 1027, 1033 n.9 (9th Cir. 2007). Pls.' State Opp'n 17. In a footnote, *Day* quoted Justice Breyer's statement in *Rice v. Cayetano*, 528 U.S. 495, 525 (2000) (Breyer, J., concurring), that "the Admission Act itself makes clear that the 1.2 million acres is to benefit all the people of Hawaii." Neither *Day* nor *Rice* signals any disagreement or change from *Arakaki*,

---

[3] While not clear, Plaintiffs attempt to distinguish their case from *Arakaki* on the basis that they are merely challenging whether the Admission Act should be interpreted as requiring trust proceeds to be distributed for the benefit of native Hawaiians, as opposed to actually challenging the terms of the Admission Act. Pls.' State Opp'n 11. Because the plain language of the Admission Act requires that trust proceeds be used for "the betterment of native Hawaiians," Plaintiffs are indeed challenging the terms of the Admission Act regardless of how they couch their argument. Further, Plaintiffs explicitly recognized that they question the constitutionality of the Admission Act in requesting the court to certify this question to the Attorney General pursuant to 28 U.S.C. § 2403.
    During the hearing, Plaintiffs also asserted that they recently learned that the § 5(f) trust generates no income net of expenses, and summarily argued that the Ninth Circuit would have decided *Arakaki* differently due to this fact. This assertion, which the court takes as true for purposes of this motion, does not change *Arakaki's* determination that Plaintiffs lack standing to challenge the terms of the § 5(f) trust.

11

or even addresses whether Plaintiffs have standing to challenge the terms of the § 5(f) trust.[4] Rather, Justice Breyer merely recognized that the Admission Act provides that trust proceeds apply to the benefit of all Hawaiian citizens, and is not limited to the "betterment of the conditions of native Hawaiians." *See Rice*, 528 U.S. at 525 ("The Act specifies that the land is to be used for the education of, the developments of homes and farms for, the making of public improvements for, and public use by, all of Hawaii's citizens, as well as for the betterment of those who are 'native.'").

Fifth, Plaintiffs argue that *Arakaki* was never incorporated into a final judgment such that it has no preclusive effect on the instant action.[5] It is true that

---

[4] Plaintiffs go so far as to argue that this statement in *Rice* is intervening law that overrules *Arakaki*. Pls.' State Opp'n 17. The court rejects that Justice Breyer's statement, made in a concurring opinion, and *Day's* reference to it in a footnote, undercuts *Arakaki* or makes these decisions irreconcilable. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (explaining that a three-judge panel may overrule prior circuit authority only where "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

[5] Although not necessary to rule on the instant motion, the court notes that a judgment was entered by the district court in *Arakaki* on January 15, 2004. *Arakaki v. Lingle*, Civ. No. 02-00139 SOM/KSC, Doc. No. 355, Judgment in a Civil Case. That judgment was then appealed to the Ninth Circuit, resulting in the published opinion. Plaintiffs have failed to explain why this January 15, 2004 judgment is not, in fact, a final judgment. Indeed, in *Arakaki*, Plaintiffs' attorney admitted that the January 15, 2004 judgment was final:

> THE COURT: . . . First of all, all claims that you stated in the complaint were indeed finally adjudicated by me before the case went up on appeal; correct? Otherwise, it couldn't have gone up on appeal since nobody got 54(b) certification of a partial judgment as final. So everything that you alleged in your complaint had indeed been adjudicated by me before the

five of the Plaintiffs here were also plaintiffs in *Arakaki*. The court need not, however, consider whether *Arakaki* has preclusive effect on the instant case; instead, the court applies the holding in *Arakaki* and determines that Plaintiffs lack standing to bring Count I.

Finally, Plaintiffs voice disagreement with *Arakaki*. Pls.' State Opp'n 19-23. *Arakaki* is binding law on this court. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect. Binding authority must be followed unless and until overruled by a body competent to do so."). Simply stated, the court will not ignore clear Ninth Circuit precedent directly addressing the issues presented here. The court therefore GRANTS Defendants' Motion for Judgment on Pleadings on Count I.

---

appeal was taken; right?
MR. BURGESS: That's correct. It wasn't final, but it had been adjudicated -- well, I guess it was final.
THE COURT: It had to be final for you to take an appeal; right?
MR. BURGESS: Yes.

*Id.*, Doc. No. 394, Apr. 16, 2007 Status Conference Tr. 4.

### *2.     Count III: Conspiracy to Deprive Persons of Equal Protection*

A claim for violation of 42 U.S.C. § 1985(3) includes four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citation and quotation signals omitted).

As discussed above, Plaintiffs cannot state a claim for violation of 42 U.S.C. § 1983. "The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989). Consequently, Plaintiffs cannot state a violation of 42 U.S.C. § 1985 either. The court therefore GRANTS Defendants' Motion for Judgment on Pleadings on Plaintiffs' claim for violation of 42 U.S.C. § 1985.[6]

---

[6] Plaintiffs assert that Count III also asserts a claim for common law conspiracy. *See* Pls.' OHA Opp'n 6; Compl. ¶ 66. To the extent Count III does allege a claim for common law conspiracy, the court declines jurisdiction over this claim for the reasons set forth below regarding Count II.

**B.    Count II: State Law Claim**

The remaining claim, Count II, alleges a "breach of state public trust" based on lands that are not part of the § 5(f) trust discussed above, but part of a State public trust created by Article XI, section 1 of the Hawaii Constitution.[7] Compl. ¶ 54.

The court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Because this action is in its incipiency and only state law issues remain, the court finds that based on the factors listed above it should decline to exercise jurisdiction over Count II.

---

[7] The Complaint appears to allege indirectly that these land transfers would violate the Fourteenth Amendment, *see* Compl. ¶ 59, but then also asserts that the court should exercise supplemental jurisdiction over this claim. *See id.* ¶¶ 55, 60. During the hearing, Plaintiffs confirmed that this claim alleges a state law claim only.

**C.     Leave to Amend**

Federal Rule of Civil Procedure Rule 15(a) provides that the court "should freely give leave [to amend a pleading] when justice so requires." "A district court, however, does not abuse its discretion in denying leave to amend where amendment would be futile." *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002); *see also Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 356 (9th Cir. 1996) (affirming the district court's denial of leave to amend "[b]ecause the proposed claim would be redundant and futile").

During the hearing, Plaintiffs asserted that if the court granted leave to amend, their only amendment would be to include the United States as a party. Such amendment would be futile. Simply naming the United States as a party does not remedy the fact that Plaintiffs lack standing to sue the United States. *See Arakaki*, 477 F.3d at 1061 (finding that plaintiffs lacked standing even though the United States was named as a defendant). The court therefore DISMISSES the Complaint without leave to amend.

## V.  CONCLUSION

For the reasons discussed above, the court GRANTS Defendants' Motions for Judgment on the Pleadings on Plaintiffs' federal claims (Counts I &

III), and declines to exercise jurisdiction over Plaintiffs' state law claim (Count II).

The Clerk of Court is ORDERED to close this case.

   IT IS SO ORDERED

   DATED: Honolulu, Hawaii, July 3, 2008.



            /s/ J. Michael Seabright
            J. Michael Seabright
            United States District Judge

*Kuroiwa et al. v. Lingle et al.*, Civ. No. 08-00153 JMS-KSC, Order (1) Granting State Defendants' Motion for Judgment on the Pleadings, and (2) Granting OHA Defendants' Motion for Judgment on the Pleadings